11 GRISBAUM, Judge.
TMs appeal relates to an admiralty matter in which the plaintiff, Randy Steed, seeks damages from Ms employer, Stokes Towing Company, Inc., for injuries sustained while working as a deckhand on defendant’s barge. Defendant appeals several aspects of the trial court’s judgment. We set aside in part and affirm in part.

ISSUES

We are called upon to determine a number of specific questions:
Whether the trial court erred, to-wit:
(1) in finding appellant negligent under the Jones Act;
(2) in its allocation of fault between appellant and appellee;
(3) as to the amount of maintenance awarded to appellee;
(4) in its award to appellee of future loss of found; and
*792 |2(5) in awarding appellee $1,000.00 for future medical expenses.

BASIC RECORD FACTS AND PROCEDURAL HISTORY

On October 13, 1994, Randy Steed was employed by Stokes Towing Company, Inc. (“Stokes”) as a deckhand assigned to the M/V LOYD MURPHY. At the time of the accident, the M/V LOYD MURPHY was located at the CGB Fleet on the right descending band of the Mississippi River and was in the process of building tow. Chester Andrews, captain of the M/V LOYD MURPHY, was positioned in the wheelhouse, while Steed and another deckhand, Kevin Jefferson, were laying stern wires on a barge directly in front of the wheelhouse.
Captain Andrews observed the M/V JOHN DONNELLY, a line boat owned by Ingram Barge Company (“Ingram”), and its tow proceeding upriver at a speed of ten miles per hour. Captain Andrews attempted to contact the M/V JOHN DONNELLY but received no response. Using a bullhorn, Captain Andrews then yelled at Randy Steed and Kevin Jefferson to move away from the lines and the ratchets. Kevin Jefferson immediately dropped the ratchet and moved away. Steed did not let go and attempted to finish what he was working on. As the swells from the M/V JOHN DONNELLY hit the barge, the pelican hook caught the end of Steed’s thumb and caused the accident. As a result of the accident, Steed underwent three separate surgeries on his thumb, including a bone graft and fusion of his left thumb.
Steed filed suit against both Stokes and Ingram. On July 3, 1996, the trial judge rendered judgment, finding Ingram not to be at fault and finding Stokes to be 35 percent negligent under the Jones Act in causing Steed’s accident. Steed was found to be 65 percent at fault. The court awarded Steed $50,000.00 in general damages for past and future pain, suffering and loss of enjoyment; $25,447.04 in past medical expenses; $1,000.00 in future medical expenses; $31,-560.00 for past lost wages; $167,677.00 in future lost wages; and $47,909.00 [gfor future lost found. Also, the trial court awarded maintenance in the amount of $28.00 a day.
It is from this judgment that Stokes now appeals.

STANDARD OF REVIEW

In suits brought under the Jones Act and general maritime law, findings of fact by the trial judge will not be disturbed unless they are clearly erroneous. Babineaux v. Lykes Bros. S.S. Co., Inc., 608 So.2d 659 (La.App. 3d Cir.1992). Under the “manifest error rule,” a court of appeal may not reverse a finding of fact of the trial court if it is reasonable in light of the record reviewed in its entirety. Fredericks v. Warren, 561 So.2d 208 (La.App. 5th Cir.1990).
ISSUE ONE — LAW AND ANALYSIS
Under the Jones Act, an employer is liable for the injuries negligently inflicted on its employees by its agents, officers and employees. In order to prevail in a negligence claim under the Jones Act, a plaintiff must show that defendant failed to exercise reasonable care in the maintenance of a safe work environment. Evidence of the slightest negligence is sufficient to sustain a finding of Jones Act liability and the burden on a plaintiff for showing causation is “feather weight.” See, Jones Act, 46 U.S.C.AApp. § 688; Caravalho v. Dual Drilling Services, Inc., 93-560 (La.App. 3d Cir. 2/2/94), 631 So.2d 725.
The trial court was greatly concerned by the testimony of Captain Andrews, stating that he had knowledge that appellee had the unsafe habit of hanging onto rigging during rough seas and that he had, in fact, received a report or complaint of this behavior from the ship’s first mate. The court found that the Captain’s use of the word “habit” indicated that the incidents occurred at least several times. The trial court was disturbed by the fact that no formal reprimand was ever made to appellee. On this basis, the trial court found appellant liable.
I4A Jones Act employer has a duty to supervise or instruct seamen as to safe methods by which they can carry out orders given to them. Babineaux, supra, at 663. The duty to provide a safe course of conduct lies primarily with the vessel owner, and the vessel owner is deemed negligent if he fails to exercise reasonable care to maintain a *793 reasonably safe work environment. Ceja v. Mike Hooks, Inc., 690 F.2d 1191 (5th Cir.1982).
In light of Captain Andrews’ testimony that he knew of appellee’s unsafe habit, yet continued to allow him to work on the vessel, we cannot say the trial court erred in finding appellant negligent under the Jones Act.
ISSUE TWO — LAW AND ANALYSIS
Regarding fault, the appellant contends the trial court should have found appellee to be 100 percent at fault in causing the accident.
While a seaman does have a duty to protect himself, that duty is slight. Babineaux, supra, at 662. Conversely, a captain of a vessel owes his crew a paternalistic duty to protect them. Allen v. Seacoast Products Inc., 623 F.2d 355 (1980).
For these reasons, as well as those stated above, we find that appellant owed a duty to appellee to protect him and to ensure him a safe work environment. In light of appellant’s knowledge of appellee’s unsafe work habits, we find the trial court did not abuse its discretion in finding appellant to be 35 percent at fault.
ISSUE THREE — LAW AND ANALYSIS
We now turn to the trial court’s increasing appellee’s maintenance award from $15.00 a day to $28.00 a day. The record shows the appellee failed to prove he actually incurred expenses warranting such an increase.
Maintenance and cure are designed to provide a seaman with food and lodging when he becomes sick or injured. Comeaux v. Basin Marine, Inc., 93-1624 (La.App. 1st Cir. 6/24/94) 640 So.2d 833, 836 However, in |5order to recover maintenance, a seaman must present some evidence that he actually incurred expenses for his support. Heaton v. Gulf Int’l Marine, Inc., 536 So.2d 622 (La.App. 1st Cir.1988).
We see the only evidence adduced at trial indicates that, at the time of the accident, appellee’s living expenses included $75.00 a month to help pay the rent, light bill, and telephone bill and approximately $40.00 a month in food expenses. Additionally, appellee testified that, at the time of the trial, he was living completely rent free in his brother’s trailer.
Therefore, at their peak, appellee’s living expenses were approximately $115.00 per month. Appellant was paying appellee a maintenance rate of $15.00 a day, or approximately $420.00 a month. Obviously, the original maintenance rate was more than adequate to cover appellee’s actual expenses.
In light of the fact that appellee failed to prove an increased amount of actual incurred living expenses, we find the trial court erred in increasing appellee’s maintenance award. As such, that portion of the trial court’s judgment is hereby set aside.
ISSUE FOUR — LAW AND ANALYSIS
Regarding loss of found, “found” is an admiralty term which describes the element of damages representing the value of the living expenses provided to a seaman by his employer as a condition of employment while aboard ship. Watterson v. Mallard Bay Drilling, Inc., 93-1494 (La.App. 3d Cir. 10/12/94), 649 So.2d 431; Hoe Woo Youn v. Maritime Overseas Corp., 605 So.2d 187 (La. App. 5th Cir.1992).
In making the award of found, the trial court relied on the testimony of Dr. Randy Rice, who testified that the present value for appellees future loss of found is $47,909.00. That is the amount awarded by the trial court. As there is 16evidence in the record to support the court’s award, we cannot say the trial court erred.
ISSUE FIVE — LAW AND ANALYSIS
Finally, appellant argues that the trial court erred in awarding $1,000.00 in future medical expenses. By the trial court’s own admission, “There was no evidence as to future medical expenses except as to plaintiffs continuing to experience pain, for which he took Tylenol or aspirin.”
Like any other element of special damages, future medical costs or expenses must be established with some degree of certainty, and a plaintiff must demonstrate *794 that such expenditures more probably than not -will be incurred as a result of the injury. Mayeaux v. Denny’s Inc., 95-453 (La.App. 5th Cir. 10/18/95), 663 So.2d 822. Awards will not be made for future medical expenses, which may or may not occur, in the absence of medical testimony that the expenses for necessary treatment are indicated and setting out their probable cost. Id.
Appellee’s own testimony that he takes Tylenol and aspirin for pain is insufficient to justify an award of future medical expenses. The “treatment” is clearly speculative and the cost is uncertain. Accordingly, that portion of the trial court’s judgment awarding future medical expenses is hereby set aside.
For the reasons assigned, those portions of the trial court’s judgment dated July 31, 1996, increasing maintenance from $15.00 a day to $28.00 a day and awarding $1,000.00 in future medical expenses are hereby set aside. In all other respects, the trial court’s judgment is hereby affirmed. Each party to this appeal is to bear its respective costs.

SET ASIDE IN PART AND AFFIRMED IN PART.