BARKETT, Circuit Judge,
dissenting:
I do not believe en banc review of the panel’s opinion in this case was warranted under our rules, which clearly state that
[a] petition for en banc consideration ... is an extraordinary procedure intended to bring to the attention of the entire court a precedent-setting error of exceptional importance in an appeal or other proceeding, and, ... is intended to bring to the attention of the entire court a panel opinion that is allegedly in direct conflict with precedent of the Supreme Court or of this circuit. Alleged errors in a panel’s determination of ... facts of the case (including sufficiency of the evidence), or error asserted in the panel’s misapplication of correct precedent to the facts of the case, are matters for rehearing before the panel but not for en banc consideration.
11th Cir. R. 35-3 (emphasis added). En banc review should not be used simply for a repeat discussion of 1) how an appellate court should view the record and a district court’s findings of fact; or 2) to restate the meaning of probable cause, both being clearly established matters of law in this Circuit, which were applied by the panel opinion in this case.
No one disputes that appellate review of the district court’s findings of fact requires construing the evidence in the light most favorable to the prevailing party below. See e.g. Dillon v. M.S. Oriental Inventor, 426 F.2d 977, 978 (5th Cir.1970). The panel opinion in this case clearly recognized and applied this principle. Nor was en banc necessary to address the meaning of probable cause, which was also properly defined by the panel majority. The en banc majority errs in reading into the panel’s opinion a requirement for a more heightened form of probable cause[1] simply because the panel recognized that the factual context for civil forfeiture proceedings is different and forfeitures of property are generally not favored in this country. Furthermore, the case law supports this distinction as important. See, e.g., United States v. One 1936 Model Ford V-8 De Luxe Coach, 307 U.S. 219, 59 S.Ct. 861, 865, 83 L.Ed. 1249 (1939) (finding that the taking of property without compensation “should be enforced only when within both the letter and the spirit of the law.”(emphasis added)); see also United States v. $38,000.00, 816 F.2d 1538, 1547 (11th Cir.1987) (“Forfeitures are not favored in the law; strict compliance with the letter of the law by those seeking forfeiture must be required.”).[2] The en banc court simply *1178 reapplies the established law to the facts of this case and reaches a different conclusion than did the original panel. That is not the purpose of the en banc rule.
Moreover, the original panel correctly concluded that the evidence offered by the government was insufficient to establish probable cause for civil forfeiture, taking into consideration “a common sense view to the realities of normal life.” United States v. Carrell, 252 F.3d 1193, 1201 (11th Cir.2001) (internal citation and quotation marks omitted).[3] Forfeiture should not be permitted here because the circumstances are insufficient to find that the seized money was tied in a substantial way to an illegal drug transaction. While it is arguable that the evidence may support probable cause that the money was connected to some sort of suspicious activity, it fails to establish that it was specifically connected to illegal drug activity as required under the former version of the Comprehensive Drug Abuse Prevention and Control Act, 21 U.S.C. § 881(a)(6) (1994) (“CDAPCA”); Carrell, 252 F.3d at 1201(holding that there must be a showing by the government that the money was substantially connected to illegal drug transactions).[4]
The en banc majority says that applying “common sense” to the realities “of everyday life” would lead a reasonable fact-finder to conclude that the way in which Stanford conducted her import/export business, by transporting large amounts of cash, gives rise to probable cause that Stanford was not engaged in “a legitimate business.” The majority’s conclusion is based upon several unwarranted assumptions without evidentiary support. First, the majority makes this statement without any record support for a finding that persons engaged in legitimate businesses only wire money or carry it in large denominations, rather than in cash consisting of small bills. Both Miami and New York are cities filled with immigrants engaged in lawful import/export businesses having nothing to do with drugs that are conducted in ways that may be completely different than what the majority considers to be the “usual” means for running a business. Second, whether or not Stanford was engaged in a “legitimate business” misses the point. The question is not whether the cash carried by Stanford was connected to any illegitimate business, but whether it was specifically linked to drug activity. Although common sense is to be used in how one views the evidence, it cannot be used to supply evidence that does not exist. Here, the majority reaches its conclusion that probable cause existed for civil forfeiture on the basis of suspicion and speculation, rather than sufficient evidence.[5] The probable cause standard can *1179 not be satisfied by relying upon suspicion, reasonable or not, or mere speculation. See United States v. Cleckler, 270 F.3d 1331, 1334 (11th Cir.2001).
For the foregoing reasons, I dissent.

. In this Circuit, as the panel itself recognized, it is undisputed that the same standard of probable cause used in arrest, search, and seizure cases applied to civil forfeiture cases arising prior to the 2000 amendments to the Comprehensive Drug Abuse Prevention and Control Act, 21 U.S.C. § 881(a)(6) (1994) ("CDAPCA”), see e.g., United States v. Three Hundred Sixty Four Thousand Nine Hundred Sixty Dollars, 661 F.2d 319, 323 (11th Cir.1981).

. As the en banc majority notes, this is now a moot issue with regard to civil forfeiture proceedings arising on or after August 23, 2000, in light of the 2000 amendments to the CDAP-CA. The Civil Asset Forfeiture Reform Act of 2000 raised the burden of proof from probable cause to preponderance of the evidence out of concern, in part, for inadequate protection of private property rights and in order to stop abuses arising from past controversial forfeitures by the government. This is anoth *1178 er reason why en banc review should not have been granted.

. This is so even when we take into consideration the district court's implicit factual findings consistent with its judgment and tire totality of the circumstances.

. In this Circuit, "[w]e previously have explained that the 'substantial connection’ requirement is derived from the legislative history [of 21 U.S.C. § 881(a)(6)], which states [that] [d]ue to the penal nature of foifeiture statutes, it is the intent of these provisions that property would be forfeited only if there is a substantial connection between the property and the underlying criminal activity which the statute seeks to prevent.... ” United States v. Carrell, 252 F.3d 1193, 1200 n. 7 (11th Cir.2001) (emphasis added) (internal citations and quotation marks omitted).

.It is important to note that when considering some of the evidence that was offered to specifically link the money to drugs rather than just some illegal activity, i.e., the drug-dog alert and the DEA's Narcotics and Dangerous Drug Information System ("NAD-DIS”) search on Stanford’s business (indicating that the business was possibly used for money laundering), the district court specifically found them to be of negligible value and *1179 not very significant. Also, as one of the DEA agents testified at the probable cause hearing, the number of drug "source cities” includes not only Miami and New York, but Washington D.C., Detroit, Chicago, San Antonio, Los Angeles, San Francisco, Seattle, Tacoma, and Tampa. Thus, the panel majority was correct to conclude that with increased travel and the subsequent increase in the number of drug “source cities,” the value of evidence of travel between those cities as indicative of illegal drug activity has decreased. Furthermore, with regard to the fact that the cash was wrapped in "cellophane-type” wrapping, the district court did not find that the wrapping had the properties one would expect if it were being used to mask the smell of drugs rather than merely being used to prevent the cash from being immediately visually recognized. Finally, it is also important to note that the district court never made a finding that Stanford or her brother had ever, in any way, previously been involved with any drug crimes. We have found evidence of a history of involvement with illegal drug transactions probative in other civil forfeiture cases in this Circuit. See e.g. United States v. $121,100.00, 999 F.2d 1503 (11th Cir.1993).